# EXHIBIT 1

# STATE OF NORTH CAROLINA

_____ Buncombe _____ County

File No.

In The General Court Of Justice
☐ District  ☒ Superior Court Division

| Name And Address Of Plaintiff 1 |
| --- |
| Rachel Howald |
| 324 Meadowbrooke Lane, South Orange, NJ 07079 |

**GENERAL
CIVIL ACTION COVER SHEET**

☒ INITIAL FILING   ☐ SUBSEQUENT FILING

| Name And Address Of Plaintiff 2 |
| --- |

Rule 5(b) of the General Rules of Practice for the Superior and District Courts

## VERSUS

Name And Address Of Attorney Or Party, If Not Represented
(complete for initial appearance or change of address)

| Name And Address Of Defendant 1 |
| --- |
| Ben Lippen School, an assumed business name for Columbia International University (formerly known as Columbia Bible College) |
| 7435 Monticello Rd., Columbia,      SC      29203 |

Jonathan S. Shbeeb & John B. Riordan, Fidelity Law Group
Basyle Tchividjian, Landis Graham French
Peter Janci, Crew Janci, LLP
8511 Davis Lake Parkway, STE C6-138,   NC     28269

| Telephone No. | Cellular Telephone No. |
| --- | --- |
| 704-285-8111 | |

Summons Submitted
☒ Yes  ☐ No

| NC Attorney Bar No. | Attorney Email Address |
| --- | --- |
| 54973 | j.riordan@theflg.com, j.shbeeb@theflg.com |

| Name And Address Of Defendant 2 |
| --- |
| Pamela Kaye Herrington |
| 809 Copeland Street, Lufkin, TX 75904-4952 |

☒ Initial Appearance in Case  ☐ Change of Address

| Name Of Firm | Fax No. |
| --- | --- |
| Fidelity Law Group | 704-285-8112 |

Summons Submitted
☒ Yes  ☐ No

Counsel For
☒ All Plaintiffs  ☐ All Defendants  ☐ Only: (list party(ies) represented)

☒ Jury Demanded In Pleading   ☐ Complex Litigation   ☐ Stipulate to Arbitration

## TYPE OF PLEADING

(check all that apply)

☐ Amend (AMND)
☐ Amended Answer/Reply (AMND-Response)
☐ Amended Complaint (AMND)
☐ Assess Costs (COST)
☐ Answer/Reply (ANSW-Response) (see Note)
☐ Change Venue (CHVN)
☒ Complaint (COMP)
☐ Confession Of Judgment (CNFJ)
☐ Consent Order (CONS)
☐ Consolidate (CNSL)
☐ Contempt (CNTP)
☐ Continue (CNTN)
☐ Compel (CMPL)
☐ Counterclaim (CTCL) Assess Court Costs
☐ Crossclaim (CRSS) (list on back) Assess Court Costs
☐ Dismiss (DISM) Assess Court Costs
☐ Exempt/Waive Mediation (EXMD)
☐ Extend Statute Of Limitations, Rule 9 (ESOL)
☐ Extend Time For Complaint (EXCO)
☐ Failure To Join Necessary Party (FJNP)

☐ Failure To State A Claim (FASC)
☐ Implementation Of Wage Withholding In Non-IV-D Cases (OTHR)
☐ Improper Venue/Division (IMVN)
☐ Including Attorney's Fees (ATTY)
☐ Intervene (INTR)
☐ Interplead (OTHR)
☐ Lack Of Jurisdiction (Person) (LJPN)
☐ Lack Of Jurisdiction (Subject Matter) (LJSM)
☐ Modification Of Child Support In IV-D Actions (MSUP)
☐ Notice Of Dismissal With Or Without Prejudice (VOLD)
☐ Petition To Sue As Indigent (OTHR)
☐ Rule 12 Motion In Lieu Of Answer (MDLA)
☐ Sanctions (SANC)
☐ Set Aside (OTHR)
☐ Show Cause (SHOW)
☐ Transfer (TRFR)
☐ Third Party Complaint (list Third Party Defendants on back) (TPCL)
☐ Vacate/Modify Judgment (VCMD)
☐ Withdraw As Counsel (WDCN)
☒ Other (specify and list each separately)
   Summons

**NOTE:** _All filings in civil actions shall include as the first page of the filing a cover sheet summarizing the critical elements of the filing in a format prescribed by the Administrative Office of the Courts, and the Clerk of Superior Court shall require a party to refile a filing which does not include the required cover sheet. For subsequent filings in civil actions, the filing party must include either a General Civil (AOC-CV-751), Motion (AOC-CV-752), or Court Action (AOC-CV-*)  * ...._

(Over)

AOC-CV-751, Rev. 3/19, © 2019 Administrative Office of the Courts

| | CLAIMS FOR RELIEF | |
|---|---|---|

| | | |
|---|---|---|
| ☐ Administrative Appeal (ADMA) | ☐ Limited Driving Privilege - Out-Of-State Convictions (PLDP) | ☐ Product Liability (PROD) |
| ☐ Appointment Of Receiver (APRC) | | ☐ Real Property (RLPR) |
| ☐ Attachment/Garnishment (ATTC) | ☐ Medical Malpractice (MDML) | ☐ Specific Performance (SPPR) |
| ☐ Claim And Delivery (CLMD) | ☐ Minor Settlement (MSTL) | ☐ Other *(specify and list each separately)* |
| ☐ Collection On Account (ACCT) | ☒ Money Owed (MNYO) | |
| ☐ Condemnation (CNDM) | ☐ Negligence - Motor Vehicle (MVNG) | |
| ☐ Contract (CNTR) | ☒ Negligence - Other (NEGO) | |
| ☐ Discovery Scheduling Order (DSCH) | ☐ Motor Vehicle Lien G.S. Chapter 44A (MVLN) | |
| ☐ Injunction (INJU) | ☐ Possession Of Personal Property (POPP) | |

| Date | Signature Of Attorney/Party |
|---|---|
| 01/15/2021 | *(signature)* |

**FEES IN G.S. 7A-308 APPLY**
Assert Right Of Access (ARAS)
Substitution Of Trustee (Judicial Foreclosure) (RSOT)
Supplemental Procedures (SUPR)

**PRO HAC VICE FEES APPLY**
Motion For Out-Of-State Attorney To Appear In NC Courts In A Civil Or Criminal Matter (Out-Of-State Attorney/Pro Hac Vice Fee)

| No. | ☐ Additional Plaintiff(s) |
|---|---|
| | Ran out of room. Please add following addresses and email addresses for attorneys of record: |
| | For Basyle Tchividjian: Landis, Graham, French, 145 E. Rich Avenue, STE C, Deland, FL 32723 (pending pro hac vice admission) |
| | For Peter Janci: Crew Janci, LLP, 1200 NW Naito Parkway, STE 500, Portland, Oregon 97209 (pending pro hac vice admission) |
| | |
| | |

| No. | ☐ Additional Defendant(s) | ☐ Third Party Defendant(s) | Summons Submitted |
|---|---|---|---|
| | | | ☐ Yes ☐ No |
| | | | ☐ Yes ☐ No |
| | | | ☐ Yes ☐ No |
| | | | ☐ Yes ☐ No |
| | | | ☐ Yes ☐ No |

*Plaintiff(s) Against Whom Counterclaim Asserted*

| |
|---|
| |
| |
| |

*Defendant(s) Against Whom Crossclaim Asserted*

| |
|---|
| |
| |
| |

# STATE OF NORTH CAROLINA

_____Buncombe_____ County

File No. _____

In The General Court Of Justice
☐ District  ☒ Superior Court Division

| | |
|---|---|
| **Name Of Plaintiff**<br>Rachel Howald | |
| **Address**<br>324 Meadowbrooke Lane | **CIVIL SUMMONS** |
| **City, State, Zip**<br>South Orange, NJ, 07079 | ☐ **ALIAS AND PLURIES SUMMONS (ASSESS FEE)** |
| **VERSUS** | G.S. 1A-1, Rules 3 and 4 |
| **Name Of Defendant(s)**<br>Columbia International University<br><br>Pamela Kaye Herrington | **Date Original Summons Issued**<br><br>**Date(s) Subsequent Summons(es) Issued** |

**To Each Of The Defendant(s) Named Below:**

| | |
|---|---|
| **Name And Address Of Defendant 1**<br>Columbia International University<br>7435 Monticello Road<br>Columbia, SC 29203 | **Name And Address Of Defendant 2**<br>Pamela Kaye Herrington<br>809 Copeland Street<br>Lufkin, TX  75904 |

⚠️ **IMPORTANT! You have been sued! These papers are legal documents, DO NOT throw these papers out! You have to respond within 30 days. You may want to talk with a lawyer about your case as soon as possible, and, if needed, speak with someone who reads English and can translate these papers!**

**¡IMPORTANTE! ¡Se ha entablado un proceso civil en su contra! Estos papeles son documentos legales. ¡NO TIRE estos papeles!**
**Tiene que contestar a más tardar en 30 días. ¡Puede querer consultar con un abogado lo antes posible acerca de su caso y, de ser necesario, hablar con alguien que lea inglés y que pueda traducir estos documentos!**

**A Civil Action Has Been Commenced Against You!**

You are notified to appear and answer the complaint of the plaintiff as follows:

1. Serve a copy of your written answer to the complaint upon the plaintiff or plaintiff's attorney within thirty (30) days after you have been served. You may serve your answer by delivering a copy to the plaintiff or by mailing it to the plaintiff's last known address, and

2. File the original of the written answer with the Clerk of Superior Court of the county named above.

If you fail to answer the complaint, the plaintiff will apply to the Court for the relief demanded in the complaint.

| | |
|---|---|
| **Name And Address Of Plaintiff's Attorney (if none, Address Of Plaintiff)**<br>John Riordan; Jonathan Shbeeb; Boz Tchividjian; Peter Janci<br>8511 Davis Lake Pkwy.<br>STE C6-138<br>Charlotte, NC 28269 | **Date Issued**           **Time**          ☐ AM  ☐ PM |
| | **Signature** |
| | ☐ Deputy CSC   ☐ Assistant CSC   ☐ Clerk Of Superior Court |

| | |
|---|---|
| ☐ **ENDORSEMENT (ASSESS FEE)**<br>This Summons was originally issued on the date indicated above and returned not served. At the request of the plaintiff, the time within which this Summons must be served is extended sixty (60) days. | **Date Of Endorsement**      **Time**        ☐ AM  ☐ PM |
| | **Signature** |
| | ☐ Deputy CSC   ☐ Assistant CSC   ☐ Clerk Of Superior Court |

**NOTE TO PARTIES:** _Many counties have **MANDATORY ARBITRATION** programs in which most cases where the amount in controversy is $25,000 or less are heard by an arbitrator before a trial. The parties will be notified if this case is assigned for mandatory arbitration, and, if so, what procedure is to be followed._

(Over)

| | RETURN OF SERVICE | |
|---|---|---|

I certify that this Summons and a copy of the complaint were received and served as follows:

## DEFENDANT 1

| Date Served | Time Served ☐ AM ☐ PM | Name Of Defendant |
|---|---|---|

☐ By delivering to the defendant named above a copy of the summons and complaint.

☐ By leaving a copy of the summons and complaint at the dwelling house or usual place of abode of the defendant named above with a person of suitable age and discretion then residing therein.

☐ As the defendant is a corporation, service was effected by delivering a copy of the summons and complaint to the person named below.

*Name And Address Of Person With Whom Copies Left (if corporation, give title of person copies left with)*

☐ Other manner of service *(specify)*

☐ Defendant WAS NOT served for the following reason:

## DEFENDANT 2

| Date Served | Time Served ☐ AM ☐ PM | Name Of Defendant |
|---|---|---|

☐ By delivering to the defendant named above a copy of the summons and complaint.

☐ By leaving a copy of the summons and complaint at the dwelling house or usual place of abode of the defendant named above with a person of suitable age and discretion then residing therein.

☐ As the defendant is a corporation, service was effected by delivering a copy of the summons and complaint to the person named below.

*Name And Address Of Person With Whom Copies Left (if corporation, give title of person copies left with)*

☐ Other manner of service *(specify)*

☐ Defendant WAS NOT served for the following reason:

| Service Fee Paid $ | Signature Of Deputy Sheriff Making Return |
|---|---|
| Date Received | Name Of Sheriff (type or print) |
| Date Of Return | County Of Sheriff |

NORTH CAROLINA

BUNCOMBE COUNTY

IN THE GENERAL COURT OF JUSTICE
SUPERIOR COURT DIVISION
File No._____

RACHEL HOWALD,

     Plaintiffs,

v.

BEN LIPPEN SCHOOL, an assumed business
name for COLUMBIA INTERNATIONAL
UNIVERSITY (formerly known as
COLUMBIA BIBLE COLLEGE)
 and
PAMELA KAYE HERRINGTON,

    Defendants.

)
)
)
)
)
)
)
)
)
)
)
)

**COMPLAINT AND DEMAND**
**FOR JURY TRIAL**

   NOW COME the Plaintiffs, complaining of Defendants and demanding a trial by jury, and allege and say as follows:

   1.  Upon information and belief, Defendant Pamela Defendant Herrington, (hereinafter referred to as "Defendant Herrington" or collectively as Defendants) was at all times relevant hereto a citizen and resident of Buncombe County, North Carolina but currently resides in Lufkin, Texas.

   2.  Upon information and belief, Defendant Ben Lippen School (hereinafter referred to as "Ben Lippen" or "the school" or "Defendant") is an assumed business name for COLUMBIA INTERNATIONAL UNIVERSITY.  Columbia International University (formerly known as "Columbia Bible College" is a  corporation organized and existing under the laws of the State of South Carolina, with its principle place of business located in Columbia, Richland County, South Carolina.  This Defendant will hereinafter be referred to in this complaint as "Ben Lippen School" or "Ben Lippen."

1

3.     This court has personal jurisdiction over Ben Lippen in that at all times relevant hereto Defendant Ben Lippen conducted business in the state of North Carolina, including Buncombe, NC.

4.     This court is the proper venue for this action pursuant to N.C. Gen. Stat. § 1-80.

5.     Defendant Ben Lippen has been properly served with the Summons and Complaint in this matter pursuant to the applicable provisions of the North Carolina General Statutes and the North Carolina Rules of Civil Procedure, and there are no outstanding issues of process, service of process, or jurisdiction.

## FACTUAL BACKGROUND

6.     The allegations set forth in Paragraphs 1 through 11 are hereby realleged and incorporated by reference as if fully set forth herein.

7.     Defendant Ben Lippen offered boarding for high school age students and had accommodations for students to stay on site at the school in dormitories, then-located in Asheville, North Carolina. Ben Lippen also accepted a lesser number of day students.  Ben Lippen provided overnight accommodations for day students within the dormitories on an as-needed basis.

8.     Upon information and belief, Ben Lippen segregated students by gender in sports and in the dormitories and assigned gender-matched faculty members as coaches.

9.     Upon information and belief, Ben Lippen had no policy for supervising or restricting interactions between faculty members and students.

10.     Upon information and belief, Ben Lippen had no requirement that there be more than one faculty member present with students on the dormitories at any given time.

11.     Upon information and belief, Ben Lippen had no policy against having students spend time or stay overnight in faculty dorm rooms.

2

12.	Upon information and belief, Ben Lippen had no policy against having students enter or spend the night at any off-campus faculty housing, such as apartments.

13.	Upon information and belief, Ben Lippen had no policy preventing adult staff from being alone with students in school vehicles during road trips for school-sponsored athletic events.

14.	Upon information and belief, Ben Lippen had no policy preventing adult staff from being along with students in hotel rooms during overnight trips for school-sponsored events.

15.	Upon information and belief, Ben Lippen allowed some staff unrestricted use of an all-access passkey, with which such staff could enter a student dorm room without student consent.

16.	Upon information and belief, Ben Lippen had inadequate policies preventing harassment, stalking, and sexual conduct by staff members towards students.

17.	Upon information and belief, Ben Lippen had no policy preventing students from traveling alone with faculty members in the faculty members' personal vehicles.

18.	Defendant Herrington was one such faculty member whom had unrestricted access and who was hired in 1982 as a teacher and coach.

19.	Defendant Herrington was employed by Ben Lippen from 1982-1988 and was an agent of Ben Lippen School. The years relevant to this action are 1986-1988 ("Relevant period").

20.	Defendant Herrington was in her late thirties and unmarried at the time Ben Lippen hired her.

21.	Upon information and belief, Ben Lippen allowed Defendant Herrington to live in one of the girl's dormitory buildings, alongside the students who lived there.

3

22.     Upon information and belief, Defendant Ben Lippen gave Defendant Herrington unsupervised and unrestricted access to the rooms occupied by female students.

23.     Defendant Herrington was a known bully to both fellow faculty members and students alike and had a reputation among faculty and staff for erratic emotional outbursts and extreme rage that even manifested in violent outbursts and throwing things. She was widely recognized by faculty and staff as someone who used her anger as a means of control over others, adults and children alike.

24.     During the course of her association with Defendant Ben Lippen, Defendant Herrington used her position to befriend female students and then engage in sexual misconduct against some of those students. Over time she also befriended the parents of these female students and used Defendant Ben Lippen to facilitate her lascivious agenda. She manipulated these young female students and their families, gained their trust and then took advantage of them. Defendant Herrington did was able to earn the trust and confidence of the parents in part because she had the apparent endorsement and trust of Defendant Ben Lippen.

25.     Defendant Herrington targeted her young victims and then spent months grooming them by showering them with attention and allowing them privileges not provided to other students. The intentional grooming by Defendant Herrington was followed by physical and sexual contact of young females who were becoming aware of their own bodies and sexuality

26.     It was during this time that Defendant Herrington targeted, groomed, and eventually sexually victimized Rachel Howald, who was, at the time she first met Defendant Herrington, sixteen years old.

27.     To gain Rachel's trust and admiration, Defendant Herrington began by providing her with special benefits that were not available to other students. For instance, Defendant Ben

4

Lippen had a strict media policy and required prior approval for all music listened to by students. A master list of pre-approved artists/bands was available but any other music had to be vetted individually by faculty members and then given a sticker on the cassette tape to indicate it was approved. Defendant Herrington provided Rachel with sheets of faculty approval stickers to put on any/all of her cassette tapes. This allowed Rachel to have unrestricted access to all of her music.

28.     Defendant Ben Lippen also placed Defendant Herrington in charge of assigning afternoon chores to students. It was through this authority, granted by Defendant Ben Lippen, that Defendant Herrington was able to assign Rachel chores that were easier or that had to be done in the proximity of Defendant Herrington, furthering her control over Rachel.

29.     Since Defendant Herrington assigned students their chores, she knew their whereabouts. As such, she would periodically appear while Rachel was doing her chores.

30.     Defendant Herrington used these same methods to stalk Rachel during her time at Ben Lippen, both while completing her assigned chores and during her free time. This caused Rachel to seek shelter in friend's dorms or even the woods behind the dorms to escape Defendant Herrington's attention.

31.     Defendant Herrington used her position as a coach of the three teams on which Rachel played (two of which she was team captain), as well as her position as sponsor of Student Council (of which Rachel was a member) and her position as Junior Class Advisor (of which Rachel was Class President) to freely and repeatedly induce Rachel into Defendant Herrington's faculty dorm apartment, which was located in the girls' dormitory on the Junior Class floor.

32.     Defendant Herrington would initiate physical contact by scratching Rachel's back, then slowly move on to more invasive contact, such as putting her hands under Rachel's shirt and bra, fondling Rachel's breasts.

33.     It was during the beginning of volleyball season of 1987 that Defendant Herrington's abuse of Rachel became more sexual in nature.

34.     One event took place at a junior class movie night. With the apparent endorsement of Defendant Ben Lippen, Defendant Herrington convinced Rachel's parents to allow Rachel to stay overnight with Defendant Herrington on the Defendant Ben Lippen's property. Because Rachel was feeling ill, Defendant Herrington insisted it was safer for her to sleep over rather than drive home approximately 25 miles late at night while sick.

35.     After the movie ended, Defendant Herrington and Rachel returned to the dorm with the rest of the junior girls. Defendant Herrington used her Ben Lippen passkey to unlock the door to the janitor's closet located opposite her apartment door which contained an extra mattress. Rather than putting the mattress in the living room of her faculty apartment in the dorm, she placed the mattress in her own bedroom immediately next to her bed. Rachel fell asleep on the mattress and was suddenly awakened to find that Defendant Herrington was behind her on the mattress. Defendant Herrington assured Rachel that she was only helping her feel better and then proceeded to get as close to her as possible and cuddle up next to her. Defendant Herrington then forced her hands under Rachel's pajama shirt and began to fondle her breasts, clearly becoming sexually excited.

36.     The sexual abuse continued while both Defendant Herrington and Rachel remained on Ben Lippen's campus.

6

37.     The Defendant repeatedly left Rachel unsupervised in the care of Defendant Herrington when she regularly stayed for extended period of time until the late evening or overnight in Defendant Herrington's dorm apartment with no other adults or students present.

38.     It was during these repeated unsupervised afternoons and overnights with Defendant Herrington on the Defendant's property that Rachel was sexually abused by Defendant Herrington over and over again. This abuse included but was not limited to, fondling Rachel's breasts, squeezing Rachel's nipples, and grinding her vaginal area aggressively into Rachel's upper thigh or on top of Rachel's vaginal area until Defendant Herrington climaxed to an orgasm.

39.     As Student Council Faculty Rep, Defendant Herrington chaperoned a trip to a student council retreat at Bryan College in Chattanooga, Tennesse where she sexually abused Rachel in the same manner in a college dorm serving as overnight housing for the school-sponsored trip.

40.     On school-sponsored trips for away games, Defendant Herrington sexually abused Rachel in school-owned vehicles (many of which she served as driver) used for transporting athletes to games.

41.     During an overnight away game during softball season, Defendant Herrington sexually abused Rachel in a hotel room, demanding that Rachel get into bed with her in spite of being immediately next door to hotel rooms occupied by other student athletes.

42.     This abuse continued three to four times a week and began to become more aggressive. For instance, Defendant Herrington eventually began kissing Rachel and repeatedly attempted to force her fingers into Rachel's underwear with the intent of touching and/or penetrating her vagina. As she was perpetrating the sexual abuse, Defendant Herrington often

7

insisted that she loved Rachel and demanded that Rachel respond in kind. Rachel's refusal to do so would enrage Defendant Herrington and make her more physically aggressive. In addition, Rachel would frequently cry during the sexual abuse. Defendant Harrington would ignore Rachel's tears and continue her abuse until reaching orgasm.

43.     This sexual abuse by Ben Lippen's employee was eventually perpetrated upon Rachel in her own home.

44.     Defendant Herrington used her position as an employee of the Defendant to gain access to Rachel at home by calling Rachel's parents and stating that she had to speak with Rachel concerning a sport, class, or other academic activity related to the Defendant. These harassing phone calls and visits continued for so long that Rachel's own mother began to become irate with their frequency.

45.     Rachel was not safe anywhere on the Defendant's campus as long as Defendant Herrington was employed by the Defendant and had access to Rachel as a student who had been entrusted into the care of the Defendant while on its campus.  Not only did Defendant Herrington's employment with the Defendant provide her with opportunities to freely and openly groom Rachel, but it also provided numerous opportunities to be alone with Rachel and to sexually abuse her at various locations on the Defendant's campus as well as off campus for student functions, a Student Council retreat, or away games either in-state or out of state for volleyball, basketball, or softball.

46.     Though the Defendant had knowledge of Defendant Herrington's ability to have unsupervised access to student dorm rooms and had knowledge that Defendant Herrington spent a lot of time alone with students, the Defendant failed to take any safeguarding measures that

would have prevented and/or minimized the opportunities that Defendant Herrington had to abuse students.

47.     Furthermore, the failure of the Defendant to have any abuse reporting protocols in place minimized any opportunity for Rachel to report the abuse to the Defendant and/or to the authorities.

48.     Every instance of Defendant Herrington's sexual abuse of Rachel was perpetrated without Rachel's consent.

49.     As a result of the sexual abuse she suffered, Rachel has suffered and continues to suffer from depression, suicidal ideation, and post-traumatic stress disorder, for which she has sought professional treatment.

## FIRST CLAIM FOR RELIEF
### (Assault/Battery)

50.     The allegations set forth in Paragraphs 1 through 49 are hereby realleged and incorporated by reference as if fully set forth herein.

51.     In the event Defendant Herrington intended to touch Rachel inappropriately in a sexual nature, she engaged in conduct rising to the level of battery and assault upon Rachel, in that she:

a.      intentionally and in wanton disregard for the safety and well-being of Rachel, assaulted and battered her, encouraged Rachel to participate and sexually assaulted Rachel;

b.      acted in a manner meant to cause a reasonable person to suffer apprehension or fear of imminent harmful or offensive contact;

c.      engaged in conduct which a reasonable person would consider to be harmful or

offensive contact;

d.　　engaged in other wrongful conduct not set out herein, but which may be revealed in discovery; and

e.　　engaged in conduct rising to the level of battery and assault in other and further ways as the evidence will show and to be proven at trial.

51.　　The conduct of Defendant Herrington, as specifically alleged above, constitutes battery and assault or otherwise indicates a reckless indifference to the likelihood that such conduct would cause serious harm or apprehension of serious harm to Rachel.

52.　　Upon information and belief, at all times relevant herein, Defendant Herrington was knowingly associated with Defendant Ben Lippen and was operating under said association when the alleged incidents occurred.

53.　　The aforesaid actions and omissions by Defendant Herrington are imputed to Defendant Ben Lippen pursuant to the doctrines of agency and/or *respondeat superior*.

54.　　As a direct and proximate result of the conduct of Defendant Herrington, Rachel suffered severe physical and mental injuries arising from the sexual assaults/batteries committed by Defendant Herrington. As a result of Defendant Herrington's assaults/batteries Rachel has incurred medical expenses.

55.　　As a direct and proximate result of the conduct of Defendant Herrington, Rachel is entitled to recover from Defendant Ben Lippen compensatory damages and punitive damages in an amount to be determined by a jury and in excess of the jurisdictional limit of this Court.

## SECOND CLAIM FOR RELIEF
### (Negligent Retention and Supervision of Defendant Herrington)

56.    The allegations set forth in Paragraphs 1 through 55 are hereby realleged and incorporated by reference as if fully set forth herein.

57.    Upon information and belief, Defendant Ben Lippen breached its duty in retaining and supervising Defendant Herrington in the following respects:

a.    Failed to perform a proper background check of Defendant Herrington prior to allowing her to serve as a teacher and coach at the boarding school;

b.    Failed to exercise due diligence in determining whether Defendant Herrington would be a proper and safe teacher and coach;

c.    Failed to properly train Defendant Herrington regarding appropriate interaction with children;

d.    Defendant Ben Lippen failed to properly supervise Defendant Herrington and allowed her unmonitored access to students' rooms in the dormitory;

e.    Defendant Ben Lippen failed to properly supervise Defendant Herrington during school related events with young females;

f.    Defendant Ben Lippen failed to properly supervise Defendant Herrington and her interactions with Rachel whose parents had entrusted their daughter to the school and the adults associated with the school who interacted with her;

g.    Defendant Ben Lippen failed to intervene when they knew or should have known of the inappropriate relationship between Defendant Herrington and Rachel who participated in the school academic and sporting programs and activities sponsored by the school; and

h.    In other respects to be established through discovery and proved at trial.

11

58.     As a direct and proximate result of the acts and omission of the Defendant Ben Lippen, Rachel is entitled to recover of the Defendant compensatory and punitive damages in an amount to be determined by a jury and in excess of the jurisdictional limit of this Court.

### THIRD CLAIM FOR RELIEF
#### (Constructive Fraud)

59.     The allegations set forth in Paragraphs 1 through 58 are hereby realleged and incorporated by reference as if fully set forth herein.

60.     Rachel was a minor child placed in the care and supervision of the Defendant, who owed her fiduciary duties and the duties of loyalty and of good faith and fair dealing, as providing its supervision and care.

61.     Defendant Herrington utilized her position of trust and confidence as Rachel's care giver to molest and commit sexual assault and battery upon Rachel for her own personal benefit and gratification, and to Rachel's detriment.

62.     Defendant Herrington, in fact, benefitted from this abuse of Rachel's trust and confidence and the fiduciary relationship then existing.

63.     Rachel was a minor and could not consent to Defendant Herrington's wrongful conduct described herein, nor did she comprehend that Defendant Herrington would utilize the fiduciary relationship between Rachel and Defendant to take advantage of Rachel.

64.     Rachel's parents did not consent to Defendant Herrington's wrongful conduct described herein, nor did they have knowledge that Defendant Herrington would utilize the fiduciary relationship between Rachel and Defendant to take advantage of her.

65.     Defendant Herrington's actions described herein are imputed to Defendant Ben Lippen under the doctrine of *respondeat superior* because at all pertinent times, Defendant

Herrington was acting in the course and scope of her association with, or as an apparent or ostensible agent of Defendant Ben Lippen.

66.    As stated above, Rachel has suffered extreme and lasting harm as a result of Defendant's actions.

67.    As a direct and proximate result of Defendant's constructive fraud, Rachel suffered compensatory and punitive damages in excess of the jurisdictional limit of this Court.

## FOURTH CLAIM FOR RELIEF
### (False Imprisonment)

68.    The allegations set forth in Paragraphs 1 through 64 are hereby realleged and incorporated by reference as if fully set forth herein.

69.    Defendant Herrington engaged in conduct rising to the level of false imprisonment of Rachel, in that she:

a.    unlawfully confined, restrained or removed from one place to another a minor plaintiff who could not consent;

b.    unlawfully confined, restrained or removed from one place to another a minor plaintiff without their parents' consent;

c.    engaged in the above-mentioned conduct for the purpose of facilitating the commission of a felony;

c.    restrained plaintiff by force, threat or fraud;

d.    engaged in conduct not set out herein which may be revealed in discovery; and

e.    engaged in conduct rising to the level of false imprisonment in other and further ways as the evidence will show and to be proven at trial.

70.    The conduct of Defendant Herrington, as specifically alleged above, constitutes false imprisonment which caused Rachel severe emotional distress and physical harm or

13

otherwise indicated a reckless indifference to the likelihood that such conduct would cause severe emotional distress and physical harm to Rachel.

71.     Upon information and belief, at all times relevant herein, Defendant Herrington was associated with and under the supervision of Defendant Ben Lippen and was operating under said association when the alleged incidents occurred.

72.     Upon information and belief, Defendant Ben Lippen knew, or should have known, that Defendant Herrington was predisposed to commit the type of act alleged herein, or in the alternative, condoned the activity in ways to be further proven at trial.

73.     Defendant Herrington's actions described herein are imputed to Defendant Ben Lippen under the doctrine of *respondeat superior* because at all pertinent times, Defendant Herrington was acting in the course and scope of her employment with, or as an apparent or ostensible agent of Defendant Ben Lippen.

74.     In the alternative, Defendant Ben Lippen gained knowledge of the material facts concerning Defendant Herrington's conduct, and by their unreasonable inaction, ratified the misconduct by Defendant Herrington.

75.     Defendant are jointly and severally liable to the Plaintiffs for injuries and damages proximately caused by the negligence of Defendant Herrington.

76.     As a direct and proximate result of the conduct of Defendant Herrington, Rachel has suffered severe emotional distress and physical harm arising from the intentional detainment without consent and other acts committed by Defendant Herrington upon Rachel.

77.     As a direct, proximate and foreseeable result of the conduct of Defendant Herrington, Rachel is entitled to recover of Defendant compensatory and punitive damages in an amount to be determined by a jury and in excess of the jurisdictional limit of this Court.

14

## FIFTH CLAIM FOR RELIEF
### (Negligent Infliction of Emotional Distress)

78.     The allegations of Paragraphs 1 through 74 are realleged and incorporated herein by reference.

79.     As alleged above, Defendant Ben Lippen's conduct related to Rachel was negligent.

80.     The negligent conduct did, in fact, cause Rachel's severe emotional distress

81.     Defendant knew or should have known, and it was reasonably foreseeable that, Defendant Herrington's conduct would cause Rachel severe emotional distress.

82.     Defendant knew of or should have known and it was reasonably foreseeable that the failure of the employees and administrators of Defendant Ben Lippen to intervene and stop the harmful conduct of Defendant Herrington when it was or should have been clear that such harmful conduct was occurring would cause Rachel severe emotional distress.

83.     As a proximate and foreseeable result of the negligence of Defendant as alleged herein, Rachel endured pain, suffering, mental anguish, and suffered from severe emotional distress and will continue to endure pain, suffering, mental anguish, and suffer from severe emotional distress in the future.

84.     As a result of Defendant Herrington's conduct, Rachel has sought professional medical treatment.

85.     As a direct, proximate and foreseeable result of the negligence of Defendant, Rachel is entitled to recover of Defendant compensatory and punitive damages in an amount to be determined by a jury and in excess of the jurisdictional limit of this Court.

15

## SIXTH CLAIM FOR RELIEF
### (Intentional Infliction of Emotional Distress)

86.     The allegations set forth in Paragraphs 1 through 82 are hereby realleged and incorporated by reference as if fully set forth herein.

87.     Defendant Herrington engaged in conduct rising to the level of intentional infliction of emotional distress of Rachel, in that she:

    a.    engaged in conduct which a reasonable prudent person would find extreme and outrageous;

    b.    engaged in conduct amounting to extreme and outrageous conduct with the specific intent to cause severe emotional distress to another person;

    c.    engaged in conduct amounting to extreme and outrageous conduct which he knew or should have known would cause another person severe emotional distress;

    d.    engaged in conduct amounting to extreme and outrageous conduct that caused another person to suffer severe and emotional distress;

    e.    engaged in conduct not set out herein which may be revealed in discovery; and engaged in conduct rising to the level of severe infliction of emotional distress in other and further ways as the evidence will show and to be proven at trial.

88.     The conduct of Defendant Herrington, as specifically alleged above, constitutes extreme and outrageous conduct which caused Rachel severe emotional distress or otherwise indicated a reckless indifference to the likelihood that such conduct would cause severe emotional distress to Rachel.

89.     Upon information and belief and at all times relevant herein, Defendant Herrington was knowingly associated with Defendant Ben Lippen, and was operating under said association when the alleged incidents occurred.

16

90.     Upon information and belief, Defendant Ben Lippen knew, or should have known, that Defendant Herrington was predisposed to commit and/or was committing the type of act alleged herein, or in the alternative, condoned and ratified the activity in ways to be further proven at trial.

91.     The aforesaid actions and omissions by Defendant Herrington are imputed to Defendant Ben Lippen pursuant to the doctrines of agency and/or *respondeat superior*.

92.     In the alternative, Defendant Ben Lippen gained knowledge of the material facts concerning Defendant Herrington's harmful conduct as alleged herein, and by their unreasonable inaction, condoned and ratified the misconduct of Defendant Herrington.

93.     Defendants are jointly and severally liable to Plaintiff for injuries and damages proximately caused by the negligence of Defendant Herrington.

94.     As such, Rachel has sought professional medical treatment as a result of Defendant Herrington's conduct.

95.     As a direct and proximate result of the conduct of, Rachel has suffered severe emotional distress arising from the sexual offense, sexual battery, and other acts committed by Defendant Herrington upon Rachel.

## **DAMAGES**

96.     The allegations set forth in Paragraphs 1 through 95 are hereby realleged and incorporated by reference as if fully set forth herein.

97.     As a proximate and foreseeable result of the negligence of Defendant as described herein, Rachel has endured pain and suffering, mental anguish, and emotional distress and will continue to endure pain and suffering in the future.

98.    As a direct, proximate and foreseeable result of the negligence of Defendant as alleged herein, Rachel has incurred medical expenses for medical care and treatment, such treatment and expenses to continue for an undetermined amount of time.

99.    As a direct and proximate result of the intentional infliction of emotional distress inflicted on Rachel by Defendant, Rachel has suffered serious injuries and damages and are entitled to relief in an amount to be determined by a jury and in excess of the jurisdictional limit of this Court.

100.    As a proximate and foreseeable result of the negligence and the intentional infliction of emotional distress of the Defendant as described herein, Rachel incurred a loss of wages and income and suffered a loss of earning capacity causing her to continue to incur lost earnings in the future and the inability to earn wages at her full potential.

101.    The conduct of the Defendant as alleged herein was willful and/or wanton and was done with the conscious disregard of and/or indifference to the rights and safety of Rachel, and Rachel is entitled to recover punitive damages from Defendant pursuant to Chapter 1D of the North Carolina General Statutes in an amount to be determined by a jury and in excess of the jurisdictional limit of this Court.

102.    As a proximate and foreseeable result of the negligent and wrongful conduct of the Defendant as alleged herein, Rachel has sustained damages and are entitled to recover from the Defendant, jointly and severally, in an amount to be determined by a jury and in excess of the jurisdictional limit of this Court.

WHEREFORE, Plaintiff respectfully pray the Court as follows:

(a)     That Plaintiff has and recover of Defendant jointly and severally an amount to be determined by a jury and in excess of the jurisdictional limit of this Court as provided by law;

(b)     That Plaintiff be awarded pre-judgment interest as by law allowed beginning from the date of the filing of this action;

(c)     That Plaintiff has and recover from Defendant punitive damages as by law allowed;

(d)     That Plaintiff be awarded attorney's fees and costs as allowed by law;

(e)     For a trial by jury of this action; and

(f)     For all such other and further relief as the Court may deem just and proper.

This the 15th day of November 2020.

FIDELITY LAW GROUP, PLLC

/Jonathan S. Shbeeb/
Jonathan S. Shbeeb
N.C. Bar No. 55291
**FIDELITY LAW GROUP, PLLC**
8511 Davis Lake Parkway, Suite C6-138
Charlotte, NC 28269
Telephone: 704-285-8111
Email: j.shbeeb@theflg.com

/John B. Riordan/
John B. Riordan
N.C. Bar No. 54973
**FIDELITY LAW GROUP, PLLC**
8511 Davis Lake Parkway, Suite C6-138
Charlotte, NC 28269
Telephone: 704-285-8111
Email: j.riordan@theflg.com

Basyle Tchividjian
LANDIS GRAHAM FRENCH
145 E. Rich Avenue
Suite C
Deland, FL 32724
Tel: (386) 734-3451
Fax: (386) 736-1350
*Appearing Pro Hac Vice – Motion Pending*

Peter Janci
CREW JANCI, LLP
1200 NW Naito Parkway,
Suite 500,
Portland, Oregon 97209
*Appearing Pro Hac Vice – Motion Pending*

*Attorneys for Plaintiff*

**THE REST OF THIS PAGE IS LEFT INTENTIONALLY BLANK**