IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF NORTH CAROLINA
ASHEVILLE DIVISION
1:21-cv-0059-MR-WCM

| | |
|---|---|
| RACHEL HOWALD, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) |
| | ) ORDER |
| BEN LIPPEN SCHOOL, an Assumed | ) |
| Business Name For Columbia | ) |
| International University (Formerly | ) |
| Known As Columbia Bible College), and | ) |
| PAMELA KAYE HERRINGTON, | ) |
| | ) |
| | ) |
| Defendants. | ) |
| | ) |

This matter is before the Court on Defendant Ben Lippen School's Motion to Transfer Venue ("Motion to Transfer"). Docs. 17 & 18. The issues have been fully briefed and the Motion to Transfer is ripe for ruling.

I. Procedural Background

On or about January 15, 2021, Plaintiff filed her Complaint in the General Court of Justice of Buncombe County, North Carolina. Doc. 1-1.

On February 26, 2021, Defendant Ben Lippen School ("the School") removed the case based on diversity jurisdiction. Doc. 1.

On March 31, 2021, the School filed its Answer. Doc. 16. The School also filed the Motion to Transfer and a supporting memorandum. Docs. 17 & 18.

1

Plaintiff responded and the School replied. Docs. 21 & 22.

On May 26, 2021, the undersigned conducted a status conference and set a deadline of June 21, 2021 for Defendant Pamela Kaye Herrington ("Herrington") to respond to the Motion to Transfer.

On June 21, 2021, Herrington filed her Answer to Plaintiff's Complaint and also responded in opposition to the Motion to Transfer. Docs. 29 & 30.

The School subsequently replied. Doc. 31.

## II. Factual Background

The following is a summary of the relevant factual allegations set forth in Plaintiff's Complaint:

Ben Lippen School is an assumed name for Columbia International University (formerly known as Columbia Bible College), which is a corporation organized and existing under the laws of the State of South Carolina, with its principal place of business in Columbia, South Carolina. Doc. 1-1 at ¶ 2.

At all relevant times, the School conducted business in the State of North Carolina and was located in Buncombe County, North Carolina. Id. at ¶ 3.

Herrington currently resides in Lufkin, Texas, but at all relevant times was a citizen and resident of Buncombe County, North Carolina. Id. at ¶ 1.

While it operated in North Carolina, the School offered boarding and day school programs, with on-site dormitories for boarding students and for day students on an as-needed basis. Id. at ¶ 7.

The School hired Herrington in 1982 as a teacher and coach and employed her until 1988. Id. at ¶ ¶ 18 – 19.

Plaintiff alleges that between 1986 and 1988 Herrington abused female students, including sexually. Id. This alleged pattern of conduct included using her position to befriend female students and then engage in sexual misconduct against some of them. Id. at ¶ 24.

Plaintiff alleges that during this time, Herrington "targeted, groomed, and eventually sexually victimized" Plaintiff, who was 16 years old when she first met Herrington. Id. at ¶ 26.

Plaintiff alleges that Herrington's abuse became more sexual in nature during the 1987 volleyball season. Id. at ¶ 33. Plaintiff alleges that Herrington subsequently committed acts of abuse on School property, including in Herrington's faculty apartment which was located in a dormitory, during off-campus trips that Herrington chaperoned, and in Plaintiff's own home. Id. at ¶¶ 38, 40 – 41, 43 – 44.

Plaintiff alleges that the School knew of Herrington's ability to have unsupervised access to student dorm rooms and knew that Herrington spent a lot of time alone with students but that it failed to take measures that would have prevented or minimized Herrington's opportunities to abuse students. Id. at ¶ 46. Plaintiff also alleges that the School did not have any abuse reporting

protocols in place, which minimized Plaintiff's opportunity to report Herrington's abuse to the School or the authorities. Id. at ¶ 47.

## III. Analysis

In the Motion to Transfer, the School argues that this matter should be transferred, pursuant to 28 U.S.C. § 1404(a), to the Columbia Division of the United States District Court for the District of South Carolina.

"In a motion brought pursuant to § 1404(a), the moving party bears the burden of establishing (1) that the plaintiff could have brought the case in the transferee district and (2) that transfer would make the litigation more convenient for the parties and for the witnesses, and would advance justice." Windy City Innovations, LLC v. Microsoft Corp., No. 1:15-CV-00103-GCM, 2016 WL 1048069, at *2 (W.D.N.C. Mar. 16, 2016).

### A. District Where the Matter Might Have Been Brought

The first prong of the analysis here requires a determination of whether the District of South Carolina qualifies as a "district . . . where the matter might have been brought." 28 U.S.C. § 1404(a).

Plaintiff and Herrington argue that the case could not have been brought in the District of South Carolina because a federal court in that forum would not have personal jurisdiction over Herrington. Doc. 21 at 3; Doc. 30 at 2. The School contends that personal jurisdiction over Herrington would exist as a result of Herrington's relationship with the School. Doc. 31 at 7.

4

When considering personal jurisdiction, a court first determines whether the state's long arm statute would authorize the exercise of personal jurisdiction over a defendant, and second whether the exercise of jurisdiction "does not overstep the bounds of the Constitution." Anita's N.M. Style Mexican Food, Inc. v. Anita's Mexican Foods Corp., 201 F.3d 314, 317 (4th Cir. 2000) (citation omitted). Because "the scope of South Carolina's long-arm statute is coextensive with the Due Process Clause," the Court here may "proceed directly to the constitutional analysis." ESAB Grp., Inc. v. Zurich Ins. PLC, 685 F.3d 376, 391 (4th Cir. 2012).

The Fourth Circuit has synthesized the constitutional due process analysis into a three-part test that considers: "(1) the extent to which the defendant purposefully availed itself of the privilege of conducting activities in the State; (2) whether the plaintiffs' claims arise out of those activities directed at the State; and (3) whether the exercise of personal jurisdiction would be constitutionally reasonable." Consulting Engineers Corp. v. Geometric Ltd., 561 F.3d 273, 278 (4th Cir. 2009).

Courts have considered a variety of "nonexclusive factors" in determining whether a defendant meets the purposeful availment requirement of the first prong. See Consulting Engineers Corp., 561 F.3d at 278. Specifically here, the School relies on whether the defendant conducted business, engaged in long-term business activities, and performed contractual duties in the

forum. Id. The School contends that because Herrington "reached into South Carolina to attain a job with a South Carolina based employer, engaged in significant, long-term relationships with that South Carolina employer, and was subject to policies that CBC formulated in South Carolina," she had more than "minimum contacts" with South Carolina. Doc. 31 at 7.

Plaintiff argues that there is no theory under which a South Carolina federal court could exercise personal jurisdiction over Herrington and that the School has failed to meet its burden of proof on this point. Doc. 21 at 5. Plaintiff contends that Herrington's employment with the School took place in North Carolina, id. at 4; doc. 17 at 2 – 3, Herrington's alleged conduct did not occur in South Carolina, doc. 21 at 5, and Herrington did not conduct business or perform any contractual obligations in South Carolina, id.

In support of its argument, the School relies on authorities discussing the fiduciary shield doctrine and the exercise of personal jurisdiction over an out of state corporate agent. See Doc. 22 at 6-8; See also Doc. 31 at 5-7. This line of cases stems from Columbia Briargate Co. v. First Nat'l Bank, 713 F.2d 1052 (4th Cir. 1983), in which the Fourth Circuit stated:

> [W]hen a non-resident corporate agent is sued for a tort committed by him in his corporate capacity in the forum state in which service is made upon him without the forum . . . he is properly subject to the jurisdiction of the forum court . . . . On the other hand, if the claim against the corporate agent rests on nothing more than that he is an officer or employee of the non-resident corporation and if any connection he had with the commission of the tort occurred

6

without the forum state, we agree that, under sound due process principles, the nexus between the corporate agent and the forum state is too tenuous to support jurisdiction over the agent personally . . . .

Briargate, 713 F.2d at 1064-65.

Courts within the District of South Carolina have reached various conclusions concerning the interpretation and application of Briargate. See Rice v. M-E-C Co., No. 2:17-CV-1274-PMD, 2017 WL 4812590 (D.S.C. Oct. 25, 2017); Companion Prop. & Cas. Ins. Co. v. U.S. Bank Nat'l Ass'n, No. 3:15-cv-01300-JMC, 2016 WL 6781057 (D.S.C. Nov. 16, 2016); Magic Toyota v. Se. Toyota Distribs., Inc., 784 F.Supp. 306 (D.S.C. 1992).

In this case, the majority of the wrongful conduct by Defendants and harm to Plaintiff is alleged to have occurred in North Carolina, not in South Carolina. Further, in its Answer, the School contends that, to the extent she engaged in the misconduct alleged in the Complaint, Herrington was acting outside the course and scope of her duties to the School. Doc 16 at 9-10.

Therefore, it is not clear that a district court in South Carolina would have personal jurisdiction over Herrington.

### B. Convenience of the Parties and Witnesses

Under the second prong of the 1404(a) analysis, the moving party must show "(1) more than a bare balance of convenience in [its] favor and (2) that a transfer does more than merely shift the inconvenience." Datasouth Comput.

7

Corp. v. Three Dimensional Tech., Inc., 719 F. Supp. 446, 451 (W.D.N.C. 1989) (alteration added) (quotation omitted). In that regard, the following factors are considered:

(1) The plaintiff's initial choice of forum;

(2) The residence of the parties;

(3) The relative ease of access of proof;

(4) The availability of compulsory process for attendance of witnesses and the costs of obtaining attendance of willing witnesses;

(5) The possibility of a view;

(6) The enforceability of a judgment, if obtained;

(7) The relative advantages and obstacles to a fair trial;

(8) Other practical problems that make a trial easy, expeditious, and inexpensive;

(9) The administrative difficulties of court congestion;

(10) The interest in having localized controversies settled at home and the appropriateness in having the trial of a diversity case in a forum that is at home with the state law that must govern the action; and

(11) The avoidance of unnecessary problems with conflict of laws.

Wiener v. AXA Equitable Life Ins. Co. LLC, No. 3:18-CV-106-RJC-DSC, 2018 WL 3398161, at *2 (W.D.N.C. July 12, 2018) (citing Scholl v. Sagon RV Supercenter, LLC, 249 F.R.D. 230, 239 (W.D.N.C. 2008)). These factors are

weighed both quantitatively and qualitatively. Id. A district court "retains 'substantial discretion' to decide transfer motions by weighing the various relevant factors." Windy City Innovations, LLC, 2016 WL 1048069, at *2 (quoting Datasouth Comput. Corp. v. Three Dimensional Techs., Inc., 719 F. Supp. 446, 450 (W.D.N.C. 1989)).

### 1. Plaintiff's Initial Choice of Forum

A plaintiff's choice of forum is entitled to "great deference." Sweeney v. Pa. Nat. Mut. Cas. Ins. Co., No. 1:05CV00931, 2007 WL 496699, at *4 (M.D.N.C. Feb. 13, 2007). That deference is diminished, though, when "(1) the plaintiff chooses a foreign forum, or (2) the cause of action bears little or no relation to the chosen forum." Speed Trac Techs., Inc. v. Estes Express Lines, Inc., 567 F. Supp. 2d 799, 803 (M.D.N.C. 2008).

However, "[i]f a transfer would merely shift the inconvenience from the Defendant to the Plaintiff, or if the equities lean but slightly in favor of the Defendant after all factors are considered, the Court should not disturb the Plaintiff's choice of forum." Phillips v. S. Gumpert Co., Inc., 627 F. Supp. 725, 727 (W.D.N.C. 1986).

Here, the School argues that Plaintiff's choice of forum is "of little import," because the Western District of North Carolina "has little connection with the operative facts of this dispute as none of the parties reside in North Carolina." Doc. 22 at 9.

9

The undersigned respectfully disagrees. While Plaintiff no longer resides in the Western District of North Carolina, her claims are significantly related to this forum; the vast majority of the alleged abuse occurred in this district, including on the School's property in Asheville, while Plaintiff was enrolled at the School and Herrington was employed there. Consequently, this factor weighs strongly against transfer.

### 2. The Residence of the Parties

None of the parties reside in this district—Plaintiff is alleged to reside in New Jersey, Herrington is alleged to reside in Texas, and the School (as Columbia International University) is alleged to be a South Carolina corporation that relocated from Asheville, North Carolina to Columbia, South Carolina in approximately 1988.

This factor weighs in favor of transfer.

### 3. The Relative Ease of Access to Proof

Under this factor, the Court is required "to weigh the convenience to witnesses and access to proof in litigating in either venue." Newbauer v. Jackson Hewitt Tax Serv. Inc., No. 2:18CV679, 2:19CV37, 2:19CV44, 2:19CV49, 2019 WL 1398172, at *12 (E.D. Va. Mar. 28, 2019). "The party asserting witness inconvenience has the burden to proffer, by affidavit or otherwise, sufficient details respecting the witnesses and their potential testimony to enable the court to assess the materiality of evidence and the

degree of inconvenience." Koh v. Microtek Int'l, Inc., 250 F. Supp. 2d 627, 636 (E.D. Va. 2003).

In support of its position, the School has provided an affidavit of Donald Jones, who has worked at Columbia International University since 1978 and has served as the Director of Human Resources for both Columbia International University and the School since 1991. Doc. 18 at 2.

Mr. Jones' affidavit states that as part of his regular job duties he has access to the school's personnel practices and personnel information, as well as knowledge of Columbia International University's "goals, core values, mission, and philosophies," and the School's operation in Asheville. Doc. 18-1 at 2. His affidavit further states that "several former [School] employees, who will likely be identified as witnesses in this case, currently live in or around Columbia, South Carolina." Id. at 3. Mr. Jones' affidavit does not provide the names of any of these potential witnesses or details as to their relationships to the parties.

Mr. Jones states that he is only aware of one former School employee who might be identified as a witness in this case who lives in North Carolina. Id. Further, according to Mr. Jones' affidavit, all of the School's records are maintained in Columbia, South Carolina. Id.

Mr. Jones states that he will be listed as a witness in the case, as he is one of the individuals who maintains custody and control of the School's

11

documents and records. Id. at 4. He will also serve as the School's corporate representative and will attend all depositions, all hearings, and the trial. Id. He states that he cannot easily delegate his job duties and that repeatedly traveling to North Carolina would adversely affect his job performance as well as the functioning of human resources at the School. Id. He concludes that transferring the case to Columbia, South Carolina, would be "much more convenient and far less burdensome" to Columbia International University, himself, and "presumably for the other witnesses who reside in South Carolina." Id.

Plaintiff has submitted an affidavit in which she states, on information and belief, that a former school nurse resides in the Asheville area and will likely be called as a witness, and that several former students who have agreed to be called as witnesses still live in North Carolina. Doc. 21 – 1 at 2. She also states, upon information and belief, that three witnesses currently reside in Virginia, two reside in Arizona, one resides in Ohio, and one resides in Pennsylvania. Id.

From this information, it appears likely that some witnesses would find litigation in Asheville to be more convenient, while others would find South Carolina to be a more convenient forum. It is not clear which forum would be more convenient for the witnesses who live in more distant states like Arizona, Ohio, Pennsylvania, or Massachusetts.

As for records, the School argues that its materials are located in Columbia, South Carolina, and therefore that Columbia would be a more appropriate venue. However, practically, modern technology often makes the production of documents easier across distances. Doc. 21 at 10.

Therefore, this factor is neutral or slightly favors transfer.

### 4. The Availability of Compulsory Process and Cost of Attendance

As noted above, potential witnesses are located in a variety of places throughout the region and the country more generally. Without more information, the Court cannot determine whether it would be more expensive for those witnesses to attend trial at one location than the other.

As for compulsory process, Federal Rule of Civil Procedure 45(c) authorizes the issuance of subpoenas for individuals to attend trials, hearings, or depositions, "within 100 miles of where the person resides, is employed, or regularly transacts business." Fed. R. Civ. P. 45(c). The School argues that its potential witnesses who live in and around Columbia, South Carolina would not be subject to subpoena if the proceedings remain in Asheville, while they could be compelled to attend if venue were transferred to South Carolina. Doc. 18 at 8.

Plaintiff, though, contends there are "several" witnesses living within 100 miles of Asheville, North Carolina. These persons would be subject to

subpoena in this district. Plaintiffs' witnesses living in other states would, presumably, likely be beyond the subpoena power of either district.

This factor does not weigh significantly for or against transfer.

### 5. Possibility of a View

Plaintiff alleges that several of the former School buildings where the events at issue allegedly occurred remain standing and are accessible with the permission of the current owners. Doc. 21 at 13. Plaintiff contends that it may be necessary to view these locations to corroborate Plaintiff's testimony and demonstrate liability. Id. at 13-14.

If a view were to be ordered, the Western District of North Carolina would obviously be more convenient; it is not apparent, on the current record, however, that a view will be necessary. Therefore, this factor weighs slightly against transfer.

### 6. The Enforceability of a Judgment, if Obtained

There is no reason to believe that a judgment from either district would be more or less enforceable. Therefore, this factor does not weigh in favor of transfer.

### 7. The Relative Advantages and Obstacles to a Fair Trial

The School contends that "obstacles to a fair trial . . . would be less in the transferee court, for the reasons discussed herein with respect to location of

14

witnesses and documents" Doc. 18 at 9, but does not make any additional specific arguments regarding this factor. As the location of witnesses and documents have been taken into account in relation to other factors, this factor does not weigh in favor of transfer.

### 8. Other Practical Problems that Make a Trial Easy, Expeditious, and Inexpensive

Herrington contends that this factor weighs in favor of denying the Motion to Transfer because transfer would require her to retain counsel in South Carolina after she has already retained counsel in North Carolina. Doc. 30 at 6.

The School counters that Herrington's North Carolina counsel could be temporarily admitted in South Carolina, and that, since North Carolina substantive law would apply following transfer, her attorneys would not be required to research unfamiliar state law, and further that courts do not consider the inconvenience of retaining new counsel when determining a motion to transfer. Doc. 31 at 9.

The School has not, though, pointed to specific information that would indicate conducting a trial in this matter in North Carolina would not be easy, expeditious, and inexpensive. Therefore, this factor does not weigh in favor of transfer.

### 9. The Administrative Difficulties of Court Congestion

The parties have not made any arguments as to this factor.

### 10. The Interest in Having Localized Controversies Settled at Home and the Appropriateness in Having the Trial of a Diversity Case in a Forum that is at Home with the State Law that must Govern the Action

Plaintiff argues that this factor weighs in favor of maintaining the action in the present venue. Plaintiff cites North Carolina Senate Bill 199, or the SAFE Child Act ("the Act"), which alters the statute of limitations regarding child sex offenses and provides a two-year grace period allowing civil actions that would otherwise be time-barred to be brought in 2020 and 2021. Doc. 21 at 15. Plaintiff states that the validity of the Act under the North Carolina Constitution is currently being litigated in the North Carolina state court system. Id. at 17.

Plaintiff's argument that "North Carolina courts have a great interest in having the constitutionality of The SAFE Child Act litigated and determined at home, not in the State of South Carolina" is noted, and the undersigned concludes this factor weighs against transfer.

### 11. The Avoidance of Unnecessary Problems with Conflict of Laws

While the courts of this district would presumably be more familiar with North Carolina state law, as no conflict of laws issues have been identified, this factor does not weigh in favor of transfer.

16

## IV. Conclusion

As discussed above, it is not readily apparent that the District of South Carolina would have personal jurisdiction over Herrington, had this litigation been initiated there.

Further, having carefully considered the additional relevant factors, the undersigned finds that while some of those factors favor transfer, others are neutral or counsel against transfer. On balance, the Court concludes that the School has not overcome the "strong presumption" that favors Plaintiff's choice of forum. Piedmont Hawthorne Aviation, Inc. v. TriTech Env't Health & Safety, Inc., 402 F. Supp. 2d 609, 616 (M.D.N.C. 2005). In addition, Plaintiff has made serious allegations about the actions and omissions of Defendants—much of which is alleged to have occurred in this district, where the School operated at the time and both Plaintiff and Herrington were located. These circumstances favor the litigation of this case in the Western District of North Carolina. See United States v. Microsemi Corp., No. 1:08CV1311 AJT/JFA, 2009 WL 577491, at *10 (E.D. Va. Mar. 4, 2009) (transferring action that was "centrally rooted" in other district).

Accordingly, Defendant Ben Lippen School's Motion to Transfer Venue (Doc. 17) is **DENIED**.

It is so ordered.

Signed: September 15, 2021

W. Carleton Metcalf
United States Magistrate Judge