IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF NORTH CAROLINA
ASHEVILLE DIVISION
CIVIL CASE NO. 1:21-cv-00059-MR-WCM

| | |
|---|---|
| RACHEL HOWALD, ) <br> ) <br> Plaintiff, ) <br> ) <br> vs. ) <br> ) <br> ) <br> PAMELA KAYE HERRINGTON, ) <br> ) <br> Defendant. ) <br> _____ ) | **MEMORANDUM OF DECISION AND ORDER** |

**THIS MATTER** is before the Court on the Plaintiff's Supplemental Brief on Damages [Doc. 60] and the Defendant's Supplemental Brief on Damages [Doc. 63].

**I.    PROCEDURAL BACKGROUND**

The Plaintiff, Rachel Howald ("Howald"), brought this action in North Carolina state court on November 15, 2020, against Defendants Ben Lippen School ("Ben Lippen") and Pamela Kaye Herrington ("Herrington"). [Doc. 1-1]. The Complaint sets out six claims for relief. In Counts One, Four, and Six, Howald set out claims against Herrington for assault and battery, false imprisonment, and intentional infliction of emotional distress ("IIED"). [Id.]. In Counts Two, Three, and Five, Howald set out claims against Ben Lippen for

negligent retention and supervision of Herrington, constructive fraud, and negligent inflection of emotional distress ("NIED"). [Id.].

On February 26, 2021, Ben Lippen filed a notice of removal to the Western District of North Carolina. [Doc. 1]. On March 31, 2021, Ben Lippen filed its answer to the Complaint, and on June 21, 2021, Herrington filed her answer. [Doc. 16, Doc. 29]. On June 29, 2022, the parties and their attorneys participated in a mediated settlement conference which resulted in a settlement of all claims against Ben Lippen. [Doc. 48]. On September 9, 2022, Howald filed a Motion for Summary Judgment against Herrington. [Doc. 49]. Herrington did not file a response to this motion. On October 31, 2022, the Court granted summary judgment on Howald's claims for assault, battery, false imprisonment, and intentional infliction of emotional distress. [Doc. 57]. The Court also held that punitive damages are appropriate in this case. [Id.]. The Court further ordered the parties to provide supplemental briefing on the issue of damages. [Id.].

On November 14, 2022, Howald filed a supplemental brief on damages and waived her right to a jury determination of damages. [Doc. 60]. On November 28, 2022, Herrington filed a supplemental brief on damages and waived her right to a jury determination of damages. [Doc. 63]. The Court granted Howald leave to file a reply to Herrington's supplemental brief, and

2

Howald filed a reply on December 9, 2022. Accordingly, the matter has been fully briefed and, as both parties have stipulated that the issue of damages can be disposed of on the pleadings, the matter is ripe for disposition.

## II. FACTUAL BACKGROUND

A detailed recitation of the underlying facts in this case is included in the Court's October 31, 2022, order granting summary judgment. [Doc. 57 at 3-8]. A brief recitation of the underlying facts follows.

Howald attended high school at Ben Lippen School. [Id. at 4]. While Howald was a student, Herrington was a coach and "Dorm Parent," responsible for enforcing the school's policies. [Id.]. During Howald's junior year, Herrington engaged in a course of routine sexual abuse of Howald. [Id. at 5]. This abuse involved Herrington groping Howald's breasts under her shirt and grinding on top of Howald in a way that was very painful for Howald. [Id.]. On one occasion, Herrington tried to put her fingers in Howald's underwear. [Id. at 6]. This abuse occurred in the school's dormitories, in hotel rooms while on overnight trips to away games, and even in Howald's own home when her parents hosted a school movie night. [Id.]. This abuse only stopped when the school moved to another state and Herrington moved away. [Id. at 7].

This abuse caused Howald lifelong emotional trauma. Howald has spent thousands on therapy and has tried a range of therapy techniques and medication. [Doc. 60-1: Howald Aff. At ¶ 20]. In the affidavit she submitted to the Court, Howald stated that she has experienced suicidal thoughts in the years since Herrington's abuse and stockpiled pills as part of a suicide plan. [Doc. 60-1 at ¶ 15]. She stated that she cannot form close relationships with others because she is not capable of trusting due to Herrington's abuse, and she recounted an inability to feel safe when sleeping, especially in hotel rooms. [Id. at ¶¶ 21-22].

Howald has been diagnosed with posttraumatic stress disorder, generalized anxiety disorder, depressive disorder, and binge-eating disorder. [Doc. 49-10 at 23-27]. A retained expert in this case determined that Howald "needs ongoing psychological treatment, most likely for the rest of her life." [Id. at 28].

## III. DISCUSSION

The Court previously determined that an award of both compensatory and punitive damages is warranted in this case. [Doc. 57]. Howald argues that an award of $23,177,500.00 is appropriate in this case. [Doc. 60 at 17].

4

Howald argues that an additional award of $69,532,500.00, three times[1] her proposed compensatory damages award, is an appropriate punitive damages award. [Id. at 22]. Herrington argues that an award of $100,000 in compensatory damages and $100,000 in punitive damages is appropriate. [Doc. 63 at 10].

### A. Compensatory Damages

Compensatory damages accrue from "some actual loss, hurt or harm resulting from the illegal invasion of a legal right." Iadanza v. Harper, 169 N.C. App. 776, 779, 611 S.E.2d 217, 221 (2005) (internal quotations omitted) (quoting Hawkins v. Hawkins, 101 N.C. App. 529, 532, 400 S.E.2d 472, 474-75 (1991)). "Compensatory damages include both general and special damages." Id. General damages include mental anguish and physical pain and suffering that "might accrue to any person similarly injured," while special damages "are usually synonymous with pecuniary loss," including medical expenses. Id. (internal quotations omitted) (first quoting Pleasant Valley Promenade v. Lechmere, Inc., 120 N.C. App. 650, 671, 464 S.E.2d 47, 62 (1995); and then quoting 22 Am. Jur. 2d Damages § 42 (2003)).

---

[1] North Carolina's statutory maximum for punitive damages is three times the amount of compensatory damages or $250,000, whichever is higher. N.C. Gen. Stat. § 1D-25 (2022).

Here, Howald has provided both evidence of special damages—the expenses she incurred from her therapy—and general damages—the emotional trauma she has suffered since Herrington's abuse. She argues that, rather than using her therapy expenses incurred to date as a starting point for compensatory damages that the Court should focus on the amount she would pay per day to not live with the pain and suffering that resulted from the abuse, a figure she approximates at $1,000 per day. [Doc. 60 at 18-19]. However, North Carolina courts have rejected this method of determining damages, noting that:

> The question in any given case is not what sum of money would be sufficient to induce a person to undergo voluntarily the pain and suffering for which recovery is sought or what it would cost to hire someone to undergo such suffering, but what, under all the circumstances, should be allowed the plaintiff in addition to the other items of damages to which he is entitled, in reasonable consideration of the suffering necessarily endured.

Fox-Kirk v. Hannon, 142 N.C. App. 267, 279, 542 S.E.2d 346, 355 (2001) (quoting Dunlap v. Lee, 257 N.C. 447, 452, 126 S.E.2d 62, 66-67 (1962)).

Herrington, on the other hand, argues that the appropriate starting point for a damage award in this case is the amount of damages awarded in similar cases. [Doc. 63 at 6-8]. Specifically, Herrington points to the damages awarded by the court in Etters v. Shanahan, No. 5:09-CT-3187-D, 2013 WL

787344 (E.D.N.C. Feb. 6, 2013), and the individual damages awards in the mass tort bankruptcy settlement in In re Boy Scouts of America, 642 B.R. 504 (Bankr. D. Del. 2022).

In Etters, the plaintiff was an inmate who was raped vaginally and anally by a prison guard and forced to have oral sex with the guard. Etters, 2013 WL 787344 at *2. The guard assaulted Etters on "at least four occasions." Id. at *6. The court reached an award of $100,000 in compensatory damages in that case based on an analysis of amounts awarded in similar cases of prison guards assaulting inmates. Id. at *5-6. However, the court declined to include in that sum an award to compensate the plaintiff for mental health treatment because she was incarcerated at the time the award was determined and "did not present evidence on the extent to which she will need treatment at [the time she is released] or its cost"; accordingly, the court concluded that "[a]ny award for such treatment would therefore be speculative." Id. at *6.

In re Boy Scouts of America approved a proposed trust agreement for more than eighty thousand claimants. In re Boy Scouts of Am., 642 B.R. at 518. To determine the award amounts for each individual claimant, the trust agreement assigned each claimant to one of six tiers based on the conduct at issue in their claim, with tier one being the most serious conduct. Id. at

7

543. Each of these tiers was assigned a base value and a maximum value for claims that fell within each tier. [Id.]. Herrington argues that the conduct in this case falls "squarely into Tier 5," a tier for claims involving "Touching of the Sexual or Other Intimate Parts (clothed), regardless of who is touching whom and not including masturbation." [Doc. 63 at 7]. Tier five carried a base claim value of $75,000 and a maximum value of $337,500. In re Boy Scouts of Am., 642 B.R. at 543.

Neither of these cases provides a perfect analogue to the present case. While Etters involved penetration, which this case did not, it also did not involve a plaintiff who was a minor at the time the abuse occurred like the present case. Notably, the damage award in that case also did not involve any sum for mental health treatment because the plaintiff was unable to provide any evidence of the potential need for or cost of that treatment after her release from prison. Although Howald provided only partial billing data, she has provided at least some evidence of the costs of her mental health treatment, unlike the plaintiff in Etters.

Herrington's suggestion that this case falls into tier five of the In re Boy Scouts of America analysis is also flawed, as this case involved more than just touching over clothes. While Howald was purportedly never *fully* unclothed, Herrington regularly groped Howald's breasts under her clothes

8

and reached into Howald's underwear on at least one occasion. This would likely place this case in tier four, a tier for claims involving "Touching of the Sexual or Intimate Parts (unclothed) by Adult Perpetrator." In re Boy Scouts of Am., 642 B.R. at 543. This tier had a base value of $150,000 and a maximum value of $675,000. Id.

Moreover, In re Boy Scouts of America was in a very different procedural posture than the present case. That case involves more than eighty thousand claimants who have made their claims to a portion of a fixed settlement amount. This case has just one plaintiff and has been adjudicated on the merits. Accordingly, the tier system and its respective amounts are a less than perfect analogue to the present case. However, the tier system does provide a helpful analogue to the present case in demonstrating that certain types of conduct, such as anal or vaginal penetration, necessitate a higher damages award for emotional distress than other types of conduct, such as touching of intimate body parts where no penetration was involved.

While neither of the cases cited by Herrington are exactly on point to the facts and procedural posture of the present case, the damage amounts and methodologies used in those cases provide a helpful starting point for the formulation of the damage award in this case, as do awards in other similar cases. In B.B. v. City of Watervliet, a city and school district reached

9

a $175,000 settlement with a plaintiff who claimed she was sexually exploited by a school resource officer employed by the school. B.B. v. City of Watervliet, No. 1:16cv00581, 2017 WL 10243117 (N.D.N.Y, Sept. 20, 2017). In S.G. v. Tulsa Public Schools, a school district reached a $300,000 settlement with a plaintiff who claimed she was groomed, hugged, kissed, fondled, and groped by a teacher in the school system while she was a student. S.G. v. Tulsa Pub. Schs., No. CJ-2017-02355, 2018 WL 1919593 (Okla. Dist. Ct. Mar. 27, 2018). In C.C. v. City of New York, the city, school district, and a teacher reached a $435,000 settlement with a plaintiff who claimed that when he was seven years old, he was touched in his genital area over his clothing. C.C. v. City of New York, No. 0704611/2013, 2018 WL 2129759 (N.Y. Super. Ct. Feb. 5, 2018). And in N.S. v. Southeast Delco School District, a school district, superintendent, and principal reached a $290,000 settlement with a plaintiff who claimed that when she was seven, she was molested by a teacher at the school. N.S. v. Se. Delco Sch. Dist., No. 2:16cv00230, 2017 WL 8180679 (E.D. Pa. Apr. 27, 2017). With these cases as a framework, the Court will determine the amount of compensatory damages in this case.

Howald has presented evidence that she has incurred medical expenses as a result of therapy costs to treat her numerous psychological

diagnoses stemming from Herrington's abuse. Although she stated that she estimates of her total costs to date at $250,000, that number is not supported by the records she submitted. The only full-year records submitted to the Court were records for 2014, 2020, and 2022.[2] While the Plaintiff's estimate appears to have been based on monthly therapy costs of $1,000, only the records for 2020 and 2022 show costs even close to that high, with yearly expenditures of $11,965 and $10,834 respectively. [Doc. 65-1 at 2-5, 10]. The Plaintiff's records show that until mid-2015 her therapy rate was $150 a week. [Id. at 8-9]. Accordingly, the records show that just under a decade ago in 2014 total therapy price was $6,000, half the cost the Plaintiff uses to estimate her therapy costs from the past two decades. [Id.]. Therefore, the Plaintiff has neither submitted records that show yearly costs of $1,000 over the past ten years for which she did submit records or provided a reasonable basis to estimate for expenses over the past twenty years. The Court will award the Plaintiff damages for the therapy costs for which she has actually

---

[2] The Plaintiff's briefing states that the 2013-2016, 2020, and 2022 records are complete and that only the 2017 and 2018 records contain partial data. [Doc. 65 at 8]. However, the 2013 records only show appointments from November and December, the 2015 records show no appointments from February through May, and the 2016 records only show appointments in January and February. [Doc. 65-1 at 6, 8-9]. Accordingly, either the Plaintiff did not attend weekly appointments in those years, or the records submitted for those years are incomplete.

11

Case 1:21-cv-00059-MR-WCM   Document 68   Filed 02/08/23   Page 11 of 17

submitted records, a total of $45,674. Accordingly, the Court concludes that an award of $45,674 in special damages is appropriate in this case.

Howald has also presented evidence that she has incurred general damages in the form of pain and suffering. While compensatory damages for pain and suffering are not as easily quantifiable, the general damages awarded to similarly situated plaintiffs indicate that the amount owed in "reasonable consideration of the suffering necessarily endured" is, on average, between $150,000 and $675,000. In determining where on the spectrum this case falls, the Court recognizes there are both aggravating and mitigating factors. As implicitly recognized by the tiers set out in In re Boy Scouts of America, the fact that this case does not involve penetration or genital contact is a mitigating factor. However, the length of time over which this abuse took place is an aggravating factor. Unlike the four instances of abuse in Etters, the abuse in the present case happened at least weekly for almost an entire school year. Additionally, Herrington was in a position of trust over Howald, who was a minor at the time, and abused that position of trust to perpetrate this abuse, including using that position to gain access to, and abuse Howald in, Howald's own home. Further, unlike many of the reference cases, where a settlement was reached pretrial, liability in this case was determined at the summary judgment stage. Weighing all of

these factors, the Court determines that an award of $350,000 is appropriate for general compensatory damages in the present case. Therefore, the Court will award Howald a total of $395,674 in compensatory damages.

### B. Punitive Damages

The Court previously determined that an award of punitive damages is warranted in this case. [Doc. 57 at 14-15]. Punitive damages are available to plaintiffs in North Carolina to punish defendants for egregiously wrongful acts and to deter the commission of similar wrongful acts. N.C. Gen. Stat. § 1D-1 (2022). In determining punitive damages, the tier of fact "*shall* consider the purposes of punitive damages set forth in G.S. 1D-1." Id. § 1D-35 (2022) (emphasis added). The trier of fact may also consider:

> a. The reprehensibility of the defendant's motives and conduct.
> b. The likelihood, at the relevant time, of serious harm.
> c. The degree of the defendant's awareness of the probable consequences of its conduct.
> d. The duration of the defendant's conduct.
> e. The actual damages suffered by the claimant.
> f. Any concealment by the defendant of the facts or consequences of its conduct.
> g. The existence and frequency of any similar past conduct by the defendant.
> h. Whether the defendant profited from the conduct.
> i. The defendant's ability to pay punitive damages, as evidenced by its revenues or net worth.

Id. Punitive damages "shall not exceed three times the amount of compensatory damages or two hundred fifty thousand dollars ($250,000), whichever is greater." Id. § 1D-25.

The purpose of punitive damages is twofold: to punish this specific defendant for her wrongful acts and to deter others who would consider engaging in similar acts in the future. These purposes weigh in favor of a relatively large punitive damages award—Herrington has never faced any criminal punishment for her actions, and the present litigation was only possible because of a state law extending the statute of limitations on child sexual abuse claims. Additionally, a larger punitive damages award would also serve as a deterrent to those who would consider committing similar acts.

Many of the other factors also weigh in favor of a large punitive damages award. The Defendant's conduct was reprehensible as it involved a routine course of abuse of a minor by an adult in a position of trust. Herrington intended to engage in this conduct, and certainly should have been aware that abusing a minor for a year would cause immense harm. The factors that are somewhat mitigating are that Herrington did not profit from the conduct and it is unclear whether she has the ability to pay a large damage award, as the parties have not presented evidence on her ability to

14

pay. However, weighing these factors and the purposes inherent in awarding punitive damages, the Court determines that a large punitive damages award is warranted in this case. Accordingly, the Court will award Howald twice her actual damages in punitive damages, for a total of $791,348 in punitive damages.

   C.   **Setoff**

Herrington argues that her liability for damages should be set off by the amount of Howald's settlement with Ben Lippen. [Doc. 63 at 9]. "North Carolina recognizes the common law principle of 'one recovery' for each injury, even where the legislature has authorized damages that are punitive in character." Ferris v. Haymore, 967 F.2d 946, 958 (4th Cir. 1992) (internal citation omitted) (citing N.C. Gen. Stat. § 1B-4). North Carolina General Statute § 1B-4 states that "[w]hen a release or covenant not to sue or not to enforce judgment is given in good faith to one of two or more persons liable in tort for the same injury . . . it reduces the claim against the others to the extent of any amount stipulated by the release or the covenant, or in the amount of the consideration paid for it, whichever is the greater." N.C. Gen. Stat. § 1B-4 (2022). "Nonsettling tortfeasors, however, are entitled to a setoff only for damages that are awarded for the same injury for which the settling defendants compensated the plaintiff." Covil Corp. v. U.S. Fidelity & Guar.

15

Co., 544 F. Supp. 3d 588, 599 (M.D.N.C. 2021) (internal quotation marks omitted) (quoting Zivitz v. Greenberg, 279 F.3d 536, 539 (7th Cir. 2002) (interpreting an analogous Illinois statute)).

Here, the Plaintiff brought separate claims[3] against Herrington and Ben Lippen—she asserted causes of action for intentional torts against Herrington and causes of action for negligence against Ben Lippen. However, she ultimately sought to hold the two defendants liable for the same injury: namely, the abuse she suffered at Howald's hands and its lasting emotional impact. Accordingly, because the settlement with Ben Lippen compensated Howald for the same injury for which damages are being awarded, Herrington's damages liability will be set off by the amount of the settlement with Ben Lippen.

---

[3] As at least one North Carolina court has held that even mutually exclusive theories of recovery do not bar application of § 1B-4's setoff provision, it follows that here, where liability could have been found on both negligence against Ben Lippen and intentional torts against Herrington, the fact that the claims asserted against the defendants differed does not bar setoff. See Ryals v. Hall-Lane Moving & Storage Co., 122 N.C. App. 134, 142, 468 S.E.2d 69, 75 (1996).

16

**IT IS, THEREFORE, ORDERED AND ADJUDGED** that the Plaintiff shall have and recover of the Defendant the amount of $1,187,022.

The Defendant shall receive credit in the form of set off against the Judgment in any amount paid by co-Defendant Ben Lippen.

The Clerk of Court is respectfully directed to prepare a judgment consistent with this Order.

**IT IS SO ORDERED.**

Signed: February 8, 2023

Martin Reidinger
Chief United States District Judge